H. F. FLINT *v.* A. E. HOLMAN.

October Term, 1909.

Present: ROWELL, C. J., MUNSON, WATSON, HASELTON, and POWERS, JJ.

Opinion filed October 30, 1909.

*Petition for New Trial—Newly Discovered Evidence—Misconduct of Juror—Sufficiency of Affidavits.*

On a petition for a new trial affidavits *held* not to show that on retrial the weight of testimony of the successful party's principal witness would be seriously impaired, nor to establish the allegation that a juror told an outsider pending the trial how he would vote to decide the case.

PETITION for a new trial, brought to the Supreme Court for Orange County at its October Term, 1909, and then heard on the affidavits in support thereof.

*N. L. Boyden, Senter & Senter* and *David S. Conant* for the petitioner.

*March M. Wilson* and *R. M. Harvey* for the petitionee.

HASELTON, J. This is a petition for a new trial. The defendant, as the case is entitled, being the petitioner. The plaintiff brought his action of case for slander against the defendant and on trial prevailed. The defendant brought the case to this Court on exceptions. On consideration of the exceptions no error was found, and the plaintiff's judgment was affirmed. The case is *Flint* v. *Holman*, 82 Vt. 297, 73 Atl. 585. The plaintiff and the defendant were both residents of the Town of Braintree in the County of Orange, and the slander alleged in the declaration and found by the jury, was the statement by the defendant, of and concerning the plaintiff, that "he had stolen from the town." One of the witnesses who testified to the utterance of the slander was Joseph Tilson, who gave evidence that on the occasion in question, which was a meeting concerning the matter of license commissioners for the Town of Braintree held in the parlor of the

33

Braintree Inn, Holman said of Flint that ''he was not an honest man,'' that ''he would steal anything that he could get his hands on,'' and that ''he had stolen from the town.'' The witness Tilson testified further with particularity.

In support of the petition for a new trial the defendant presents the affidavit of Vilas Flint who says that he was at the meeting in question, saw all the people in the room and knew them all by name, and that he did not see Joseph Tilson in the room during the meeting. This affiant testifies further that he heard what Holman said at the meeting with regard to Flint, and that Holman did not say that Flint had ever stolen from the town or from any person or corporation.

The defendant also presents the affidavit of Frank H. Thresher. This affiant testifies that he was present at the meeting, that he did not see Tilson there, and that he was not there unless he was in a part of the room indicated. This affiant testifies that Holman there said of the plaintiff ''give him a chance and he would steal the whole town,'' but that Holman did not say that Flint had ever stolen anything from any one.

Henry E. Farr in behalf of the petitioner makes affidavit that he was present at the meeting in question, that he knew every man there and that Tilson was not there. Farr's testimony is that Holman did not say that Flint had stolen from the town, but that he said of Flint ''give him a chance and he would steal the whole town.''

The plaintiff presents certain depositions. Herbert Snow testifies that he was present at the meeting in question and that he saw Joseph Tilson there and about the hotel.

Asa Snow deposes that he was at the meeting in question, and that Tilson was there.

George I. Ford deposes that he was at the Inn on the occasion of the meeting, that when the discussion in question was proceeding he stood near the door leading into the room where the meeting was, and that he had seen Tilson go into that room.

Guy Clough deposes that he was at the meeting, that he was there while Flint was under discussion, and that Tilson was there all that time.

Frank H. Thresher, whose affidavit for the petitioner has been referred to, while repeating that he did not see Tilson in the room on the occasion referred to, says that Tilson was about

the hotel that day and might have been at the meeting without being seen by the deponent from the latter's position.

Henry C. Phillips deposes that he was at the meeting, and that when he 'left the room in the afternoon he saw Tilson in the hall just outside the door.

E. I. Clafflin deposes that he was at the meeting and that Tilson was there, and that Tilson was there during the discussion of Flint by Holman.

Dwight L. Fisher deposes that he was at the meeting and that Tilson was there sitting next to him.

At a somewhat later time than the taking of the affidavits and depositions already referred to the petitioner, Holman, took the deposition of S. H. Thayer, and of the landlord of the Braintree Inn, Jerome E. French, and inquired of them as to searches made of the hotel register for Tilson's name, searches made with a view, apparently, of showing that Tilson did not, as he claimed, register at the time of the meeting there which has been referred to. The register was not produced, and whether or not the testimony elicited is admissible it is of such a character that it is of no value to the petitioner. French further testifies that he does not recall seeing Tilson at the hearing in question but cannot say whether he was there or not. The effort to show that on a new trial the testimony of Tilson would be eliminated or its weight seriously impaired must be considered to have failed. Besides, Tilson was not the only witness who testified to the slander. Herbert Snow testified on the trial that, on the occasion in question, in speaking of Flint, Holman said that "he would steal and had stole," that he could prove "he had stolen from the town."

The ground on which the petitioner mainly relies in asking for a new trial is the alleged misconduct of one of the jurymen, John Daggett of Vershire. In an affidavit attached to the petition, George A. Sargent, who on the trial was one of the petitioner's witnesses, testifies that during the trial he and the juror named boarded at the same place and occupied the same room and the same bed, and that during the trial the juror told him "how he would decide the case as far as he was concerned, * '* * * that he did not like the looks of defendant Holman and that he would give the case to the other man, * * * * that he had learned that Holman was well off and able to pay a good judgment in

damages, that they would all be surprised on both sides." This affidavit was made August 3, 1909. On the 22nd of September, 1909, the plaintiff took the deposition of the juror Daggett. He testifies that he and Sargent did board together during the trial and did occupy the same room and bed but he specifically denies that during the trial he made to Sargent any of the statements above quoted. He testifies that he did not, during the trial, express to Sargent any opinion about the parties or about the evidence in the case or say anything to him about the feelings or opinion of any of the jurymen. He says that after the trial was over he met Sargent on the street in Chelsea and in a conversation then had said that he did not like the looks of Mr. Holman. On the 6th of October, 1909, the deposition of Sargent was taken. In that he testifies that he has not seen the juror since the verdict was rendered, that he left Chelsea for his home before the verdict was rendered, that the case was given to the jury on a Wednesday, and that he first met the juror the Monday before at the supper table, that until then he had never met him, that he thinks it was Tuesday noon that he first had conversation with the juror in regard to the matters stated in his affidavit, that he next had conversation with the juror about the case Tuesday evening in bed, that the juror didn't say that he had learned that Holman was well off, but that he thought Holman was well off, that in that respect there was a mistake in the affidavit, known when it was signed, that he isn't certain whether it was at noon or at night that the juror said that so far as he was concerned he should give the case to the other man. The deponent says that no conversation with the juror as to the matters of the affidavit was had after Tuesday night. Sargent testifies that he is unable to say when he first told about the conversations, but that before he left Chelsea he told Mr. Holman, the petitioner, and Mr. Conant and Mr. Boyden, the petitioner's counsel, but he says he does not think he told them all the facts set forth in his affidavit. He says that he told them as follows: "This juryman told me that he thought that they should give the case to Mr. Flint with very little damage, just enough to make Mr. Holman pay the costs."

Attached to the petition are affidavits of Mr. Holman, Mr. Boyden and Mr. Conant. Mr. Holman says: "I did not learn and had no means of obtaining knowledge of the facts set forth

in George Sargent's affidavit relative to the improper conduct of juryman Daggett until after the cause was argued in Supreme Court.'' This was months after Sargent claims to have told Mr. Holman the material thing in respect to the misconduct of the juryman. Mr. Boyden testifies: ''I know what George Sargent says in his affidavit and the fact that juror Daggett had told him the things set forth in the said affidavit but this knowledge did not come to me in any form until after the trial of said cause was closed and too late to use the same in a motion in arrest of judgment before the trial court.'' Sargent, it will be remembered, claims that before leaving Chelsea and before the verdict he informed Mr. Boyden of the substantial part of the misconduct of the juryman. Mr. Boyden says further: ''In fact I did not learn of the matter until after the argument of said cause in the Supreme Court.'' Mr. Conant says: ''I did not learn of the facts set forth in the affidavit of Sargent until after this cause had been argued in Supreme Court.'' Since, then, the narrative of Sargent is, in one part of it, contradicted by the petitioner himself and by the petitioner's counsel, and since in every material respect it is squarely met by the testimony of the juryman it is not a sufficient basis for a finding of misconduct on the part of the juryman, and such misconduct is not found.

One ground of the petition for a new trial is that the plaintiff was unable, on the first trial, to secure the attendance of material witnesses upon the main issue, and that a motion for a continuance on that ground was denied. Another ground of the motion is that the petitioner was unfit physically to prepare his case and to attend the trial and that a motion for a continuance for those reasons was overruled.

The grounds of the petition last mentioned have not been urged upon us in argument, and upon an examination of the affidavits and depositions they are clearly seen to be insufficient.

*Petition dismissed with costs.*